IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-1471-M |
| | § | |
| APPROXIMATELY TWO HUNDRED | § | |
| TWENTY-TWO (222) FIREARMS AND | § | |
| FIREARM ACCESSORIES, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF THE
UNITED STATES MAGISTRATE JUDGE**

Claimants Kevin and Sarah Gunnip have filed a motion to dismiss, *see* Dkt.

No. 10, which Chief Judge Barbara M. G. Lynn has referred to the undersigned

United States magistrate judge for hearing, if necessary, and for findings and

recommendations, *see* Dkt. No. 12. The United States filed a response, *see* Dkt. No.

15, and Claimants filed a reply, *see* Dkt. No. 16.

Claimants seek the return of the defendant property, asserting that the United

States failed to file a complaint for forfeiture within the 90-day deadline that 18 U.S.C.

§ 983(a)(3) imposes.

Although the undersigned disagrees with Claimants' assertion that the Court

lacks jurisdiction because the United States missed this deadline, the undersigned

agrees that the complaint was untimely filed and that equitable tolling is not

warranted. For these reasons, the Court should grant Claimants' Motion to Dismiss

[Dkt. No. 10], dismiss the complaint, and order the United States to return the defendant property.

## Background

On December 6, 2018, the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives executed a federal search warrant at the home of Claimants Kevin and Sarah Gunnip in Colleyville, Texas. *See* Dkt. No. 1 ¶¶ 2, 8-30. During the search, ATF agents seized approximately 222 firearms and firearm accessories. *See id.* ¶ 2. The seized firearms were allegedly bought or sold in violation of 18 U.S.C. § 922(a)(1)(A), which prohibits any person from "dealing in firearms" without a license. *See id.* ¶ 7.

On January 30, 2019, the ATF sent Claimants notice that the agency was starting administrative forfeiture proceedings against the defendant property. *See* Dkt. No. 15 at 2. Claimants contested the forfeiture and filed claims to the property on February 13, 2019. *Id.* The ATF then transferred the claim to the United States Attorney's Office to file a civil complaint for forfeiture within 90 days, as required under 18 U.S.C. § 983(a)(3)(A). *Id.*

On May 13, 2019, the United States filed an unopposed motion to extend the filing deadline. *See* 3:19-mc-37-N, Dkt. No. 1. Several days later, the Court granted the motion and, as requested by the United States, extended the deadline until August 11, 2019. *See id.* at 3. The August 11, 2020 deadline came and went. Then, on October 10, 2019 – nearly 60 days after the August deadline – the United States filed an *ex parte* motion for an extension of time. *Id.*, Dkt. No. 4. Despite it being only the

second motion to extend on the docket, the United States called this new motion its "Third *Ex Parte* Motion for Extension of Time to File Complaint." *Id.* And, although the August deadline had not been extended, the United States requested that the Court extend the deadline from "October 10, 2019 until December 9, 2019." *Id.* The Court granted the motion and extended the deadline until December 9th, but it did not discuss the missed deadline or the incorrect dates. *See id.*, Dkt. No. 5.

The new December 9th deadline then came and went as well. Two days after this deadline, the United States filed an *ex parte* motion in which it requested permission to file under seal its "Fourth *Ex Parte* Motion for Extension of Time to File Complaint." *Id.*, Dkt. No. 8. The Court granted the request to seal and then, days later, granted the motion to extend. *See id.*, Dkt. Nos. 9, 11. Over the next several months, two more motions to extend were filed and granted without incident. *See id.*, Dkt. Nos. 12-19. And, on June 8, 2020, the United States filed its Complaint for Forfeiture In Rem and this action began. *See* Dkt. No. 1.

Claimants then filed their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Dkt. No. 10. Claimants contend that Section 983(a)(3)'s 90-day deadline is a jurisdictional limitation and, as such, the Court was stripped of jurisdiction after the United States missed the August 11, 2019 deadline. Claimants also argue that, even if the Court has jurisdiction, the Court must dismiss the complaint under Section 983(a)(3)(A) because the United States failed to file timely its complaint.

In response, the United States argues that the Section 983(a)(3) time limit is not a jurisdictional rule and, therefore, regardless of whether the United States missed the deadline, the Court has jurisdiction. As for the timeliness of its complaint, the United States does not dispute that it did not file its complaint or seek an extension before the August 11, 2019 deadline. Nevertheless, the United States contends that its complaint is still timely because the Court granted multiple extensions after the deadline, which the United States argues closed any gap that existed between the missed August 11, 2019 deadline and October 10, 2019 Order granting an extension. And, if the Court determines that the complaint is untimely, the United States contends that it is entitled to equitable tolling.

## Legal Standards and Analysis

### I.    Motion to Dismiss under Rule 12(b)(1).

#### A.    Legal Standards.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The Court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

The Court must dismiss a complaint for lack of subject matter jurisdiction "'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming*, 281 F.3d at 161 (citations omitted).

The Fifth Circuit recognizes a distinction between a "facial" attack to subject matter jurisdiction, which is based solely on the pleadings, and a "factual" attack to jurisdiction, which is based on affidavits, testimony, and other evidentiary material. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *accord Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). Regardless of the nature of the attack, the plaintiff seeking a federal

-5-

forum "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. Where, as here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack is presumptively facial, and the Court need look only to the sufficiency of the allegations of plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1989); *Paterson*, 644 F.2d at 523.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. A court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

### B.   The Court has subject-matter jurisdiction.

Claimants contend that the 90-day deadline found in Section 983(a)(3) is jurisdictional. When a deadline is jurisdictional, after the deadline has passed, the Court is stripped "of all authority to hear [the] case," *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015), and the Court must dismiss the action, regardless of any equitable considerations, *see Texas v. United States*, 891 F.3d 553, 559 (5th Cir. 2018). But, if a deadline is a claims-processing rule and not jurisdictional, the Court may

employ all available equitable powers, including tolling. *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010).

Because this distinction is so important, the United States Supreme Court has "adopted a readily administrable bright line" to determine whether a rule is jurisdictional. *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). A rule is jurisdictional only when "Congress has clearly stated that the rule is jurisdictional; absent such a clear statement … courts should treat the restriction as nonjurisdictional in character." *Id.* (quotations omitted). "This has come to resemble a clear statement rule: Congress need not 'incant magic words,' but 'traditional tools of statutory construction must *plainly show* that Congress imbued a procedural bar with jurisdictional consequences.'" *Texas*, 891 F.3d at 559 (quoting *Kwai Fun Wong*, 575 U.S. at 410).

The Supreme Court has also found that restrictions can be jurisdictional, even without a clear statement, if "a long line of [the Supreme] Court's decisions left undisturbed by Congress has treated a similar requirement as 'jurisdictional.'" *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (citations omitted). In such a case, courts "will presume that Congress intended to follow that course." *Id.*

To determine whether Section 983(a)(3) is jurisdictional, the Court begins by looking to the relevant statutory language to determine if there is a clear jurisdictional statement:

> Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint, except that a court

in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

18 U.S.C. § 983(a)(3)(A). If the United States fails to "file a complaint or return the property" within the deadline, the United States "shall promptly release the property … and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." *Id.* § 983(a)(3)(B).

Section 983(a)(3) does not contain a clear jurisdictional statement. The "provision does not speak in jurisdictional terms," *Auburn Reg'l Med. Ctr.*, 568 U.S. at 154, and its "language does not suggest, let alone *clearly* indicate, that district courts lack adjudicatory authority over a civil forfeiture complaint that was filed late by the government," *United States v. Wilson*, 699 F.3d 789, 795 (4th Cir. 2012). "While Congress undertook to provide a sanction for the failure to comply with its terms, in doing so, it did not provide or suggest that the court loses subject-matter jurisdiction as a result of noncompliance." *Id.* And the statute allows district courts – and even the parties by agreement – to extend the deadline, and that "undercuts any argument that the deadline is jurisdictional" because it is unlikely that Congress would allow courts or the parties to set the bounds of jurisdiction themselves. *Id.*

It is also "significant that the 90-day deadline is located in a provision separate from those granting federal courts subject-matter jurisdiction over forfeiture actions." *Id.* Jurisdiction in a civil forfeiture action is set forth in 28 U.S.C. § 1355(a), providing federal courts with "original jurisdiction exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any … forfeiture … incurred

under any act of Congress." Section 983, on the other hand, lays out the procedures used in a forfeiture action. Thus, "[t]he subject matter jurisdiction for forfeiture is conferred by 28 U.S.C. § 1355(a) … and the rules of procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983." *Wilson*, 699 F.3d at 795. As the Supreme Court "has often explained … Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional." *Kwai Fun Wong*, 575 U.S. at 411.

And, although Section 983(a)(3) uses mandatory language, that is not enough to make the deadline jurisdictional. The Supreme Court has indicated that mandatory language is required to find a statute jurisdictional. *Cf. Auburn Reg'l Med. Ctr.*, 568 U.S. at 154 (finding provision did "not speak in jurisdictional terms" because it "lacked the mandatory word 'shall'"). Section 983(a)(3) states first that the United States "shall file" its forfeiture complaint "[n]ot later than 90 days after a claim is filed" and, second, that if the deadline is not met, the United States "shall promptly release the property." 18 U.S.C. § 983(a)(3)(A)-(B). Those are both clear mandatory pronouncements. But mandatory language, while necessary, is not alone sufficient. *Mejia v. Barr*, 952 F.3d 255, 262 (5th Cir. 2020); *see also Henderson*, 562 U.S. 439 ("[W]e have rejected the notion that all mandatory prescriptions, however emphatic, are … properly typed jurisdictional.") (quotations omitted). Other than these mandatory phrases, there is no other suggestion that "Congress indicated, clearly or otherwise, that the procedural rule of § 983(a)(3) is a condition of jurisdiction." *Wilson*, 699 F.3d at 795.

And, while Section 983 lacks a clear statement of jurisdiction, there also is no line of authority that has considered the statute jurisdictional. To the contrary, every court to consider the question has found that it is not. *See, e.g.*, *id.* at 797 ("[T]he 90-day deadline imposed in § 983(a)(3) is not jurisdictional."); *United States v. Vazquez-Alvarez*, 760 F.3d 193, 198 (2d Cir. 2014) ("[A] late-filed forfeiture action would not deprive the district court of subject matter jurisdiction."). And "[a] number of district courts have determined that the 90-day deadline set out in § 983(a)(3)(A) is subject to equitable tolling under appropriate circumstances," *United States v. Six Hundred Fourteen Thousand Three Hundred Thirty-Eight Dollars & No Cents ($614,338.00) in United States Currency*, 240 F. Supp. 3d 287, 292 (D. Del. 2017) (collecting cases) – which is an implicit acknowledgment that the deadline is not jurisdictional.

Claimants recognize that the overwhelming weight of authority is against them, but they insist that these courts got it wrong. *See* Dkt. Nos. 10 at 8-9; 16 at 6-7. They argue that no court has given the proper "weight to the fact that the deadline is statutory and not a court rule" and that, under a proper reading of *Bowels v. Russell*, 551 U.S. 205 (2007), the deadline must be jurisdictional. Dkt. No. 10 at 7

In *Bowels*, the Supreme Court held that the time limits for filing a notice of appeal were "mandatory and jurisdictional" because, in part, the time limits were found in a statute. *Bowels*, 551 U.S. at 210-13. But *Bowels* was not decided only because the time limit was statutory – *Bowles* also "relied on a long line of [the Supreme] Court's decisions left undisturbed by Congress." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 173 (2010) (Ginsberg, J., concurring) (quotations and

alterations omitted). "*Bowels* did not hold .... that all statutory conditions imposing a time limit should be considered jurisdictional. Rather, *Bowles* stands for the proposition that context, including this Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." *Id.* at 167.

Here, far from a long line of cases finding Section 983 jurisdictional, no court – let alone the Supreme Court – has found the time limit in Section 983(a)(3) jurisdictional. And, even if the Court gave significant weight to the fact that the deadline is in a statute, there is nothing else that would turn this filing deadline into a jurisdictional time limit. *See Auburn Reg'l Med. Ctr.*, 568 U.S. at 155 ("[W]e have repeatedly held that filing deadlines ordinarily are not jurisdictional."); *see also Kwai Fun Wong*, 575 U.S. at 410 ("Time and again, we have described filing deadlines as 'quintessential claim-processing rules,' which 'seek to promote the orderly progress of litigation,' but do not deprive a court of authority to hear a case.").

Based on the absence of a clear "jurisdictional label" in Section 983, and the consistent treatment of the deadline as a non-jurisdictional rule by other courts, the 90-day deadline is not a limitation "that is properly ranked as jurisdictional." *Bowels*, 559 U.S. at 168. The Court therefore has subject matter jurisdiction and should deny Claimants' motion to dismiss under Rule 12(b)(1).

## II.    Motion to Dismiss under Rule 12(b)(6).

### A.    Legal Standards.

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic

recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 574 U.S. at 12), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the

pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim.*" Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). And "[t]here is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion," where, although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under

-14-

Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties," the United States Court of Appeals for the Fifth Circuit has held "that briefs and oral arguments in connection with the motion ... are not considered matters outside the pleadings for purposes of conversion." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016) (per curiam) (internal quotation marks and citations omitted).

### B.    The United States did not timely file its complaint.

The United States failed to timely file its complaint because it missed the August 11, 2019 deadline. The United States's argument that the complaint is nevertheless timely is not persuasive. There is no indication that the Court granted a retroactive extension on October 10, 2019 or that the United States asked for such an extension. And nothing in the text of Section 983 or in the relevant case law supports its assertion that retroactive extensions are allowed.

### 1.    The Court did not grant a retroactive extension.

The Court did not expressly grant an extension of the August 11, 2019 deadline, and there is no indication that the Court intended its extensions to apply retroactively. The Court's October 10, 2019 Order said nothing of the missed deadline and repeated the incorrect October 10, 2019 filing deadline that the United States had asserted in its motion. *See* 3:19-mc-37-N, Dkt. No. 5 (extending deadline "from October 10, 2019, until December 9, 2019"). And there is no analysis as to whether the Court could or should grant a retroactive extension, or whether the deadline should be tolled. Thus, there is no support for the United States's assertion that the

Court knew that the United States had not timely filed its complaint and intended to cure the missed deadline by granting a retroactive extension.

The Court apparently took the United States at its word that a previous extension had been granted and that the deadline had not passed. The United States's October 10, 2019 motion for an extension did not acknowledge that it had missed the deadline. *See* 3:19-mc-37-N, Dkt. No. 4. And the October 10, 2019 motion included two erroneous affirmative representations. First, it asserted that its complaint was due on October 10, 2019, even though an extension of the August 11, 2019 deadline had never been asked for or granted. *See id.*, Dkt. No. 4 at 1 ("The United States … moves the Court … to extend the time … from October 10, 2019 to December 9, 2019."); *id.* at 2 ("The Court previously extended the filing deadline, which is now scheduled to expire on October 10, 2019."); *id.* at 4 ("The United States is required to file a complaint … no later than October 10, 2019."). And, second, the United States named its motion its "Third *Ex Parte* Motion to Extend Time," although the United States had not filed a second motion. *See generally id.* If the United States ever discovered these erroneous statements, it did not correct them.

On this record, it is impossible now to say that, when the Court granted the October 10, 2019 extension and then the four extensions after that, the Court knew that the United States had missed the August deadline and intended to retroactively extend the statutory limitation period. The Court should conclude that the post-deadline extensions did not cure the United States's tardy complaint.

-16-

### 2. Retroactive extensions are not available under Section 983.

Even if the Court had intended to grant a retroactive extension, nothing in the text of Section 983 allows the Court to grant extensions after the deadline has passed. Under the statute, "a court in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties." 28 U.S.C. § 983(a)(3)(A). As the United States concedes, the use of "will be filed" indicates the statute allows prospective extensions before the deadline has passed. Dkt. No. 15 at 4. But the statute does not explicitly allow a court to grant extensions after the deadline. "Given the narrow language used in the statute," the text supports only that "the Government has to seek the extension before the limitations period passes and … cannot seek a 'retroactive extension.'" *United States v. Funds from Fifth Third Bank Account*, No. 13-11728, 2013 WL 5914101, at *9 (E.D. Mich. Nov. 4, 2013).

To grant an extension after the deadline here, the Court would have to read language into the statute, which it cannot do. "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019) (quoting A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 94 (2012)). And "judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Id.* at 361. In other statutes, Congress has authorized post-deadline extensions. *See, e.g.*, 2 U.S.C. § 394(c) ("[U]pon motion made after the expiration of the specified period, [the committee may] permit the act to be done where the failure to act was the result of

excusable neglect."); 28 U.S.C. § 2107(c) ("The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause."); *cf.* FED. R. CIV. P. 6(b)(1)(B) (allowing courts to extend procedural and court-made deadlines "on motion made after the time has expired"). Here, there is no such language.

And allowing retroactive extensions is inconsistent with the purpose of the deadline. Congress enacted Section 983 as part of the Civil Asset Forfeiture Reform Act of 2000, in part because of "the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. LEGIS. 125 (2001). If retroactive extensions are allowed, the United States could skirt the more demanding standards of equitable tolling if it misses a deadline and instead seek an extension under the more liberal good cause standard. This would put claimants in a position less favorable to the United States, which is at odds with one of the reasons that Congress imposed the Section 983(a)(3)(A) deadline. The Court should therefore "decline[] the Government's invitation to override Congress' considered choice by rewriting the words of the statute." *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 632 (2018).

This conclusion is supported by the bulk of authority. Although no circuit court has weighed in, district courts that have addressed this question "have consistently held that an extension must be requested before the complaint deadline has elapsed, and that retroactive extensions are not permitted." *United States v. 2014 Mercedes-Benz GL350BLT, VIN: 4JGDF2EE1EA411100*, 162 F. Supp. 3d 1205, 1210 (M.D. Ala. 2016) (collecting cases).

The only case cited by the United States in which a court granted a retroactive extension, *United States v. $55,140.00 in U.S. Currency*, No. 5:04-cv-407–SPM/AK, 2005 WL 6577605 (N.D. Fla. Jan. 20, 2005), does not persuade the Court otherwise. In *$55,140.00 in U.S. Currency*, the district court granted a "post-expiration extension" after a hurricane "caused lasting disruptions to the United States Attorney's office" that had filed the complaint and motion to extend time after the deadline. *Id.* at *1. The court held that "[a]n extension can be granted even after the 90-day period has expired," offering no analysis in support of this proposition and citing only *United States v. $39,480.00 in U.S. Currency*, 190 F. Supp. 2d 929, 933 (W.D. Tex. 2002) as authority. *Id.*

But *$39,480.00 in U.S. Currency* does not support that holding. There, the district court did not grant a retroactive extension; instead, it found that "tolling the ninety-day deadline" was appropriate. 190 F. Supp. 2d at 931, 933. Although the practical effect of either a post-deadline extension or tolling is the same, the "statutory 'good cause' mechanism for enlarging the deadline for filing a complaint" in Section 983 and the "doctrine of equitable tolling" are "legally and analytically

distinct." *United States v. $34,796.49, more or less, in U.S. Currency*, No. CIV.A. 14-0561-WS-B, 2015 WL 1643582, at *6 (S.D. Ala. Apr. 13, 2015). And so neither *$55,140.00 in U.S. Currency* nor *$39,480.00 in U.S. Currency* offers any support to the United States's position that retroactive extensions can be granted.

Because the record does not support that the October 10, 2019 Order granting an extension was meant to apply retroactively, and because there is no law that supports that such an extension could be granted, the undersigned concludes that the United States failed to timely file its complaint. For that reason, the United States can only proceed if the Section 983(a)(3) filing deadline is tolled.

### C.    The United States is not entitled to equitable tolling.

The United States has failed to show that it pursued its rights diligently or that any extraordinary circumstance prevented it from filing the complaint on time. The Court should conclude that the United States is not entitled to equitable tolling.

Equitable tolling is available only in "rare and exceptional circumstances." *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010). The "general standard for equitable tolling" requires the party that missed a statutory deadline to establish: "(1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented timely filing." *Lugo-Resendez v. Lynch*, 831 F.3d 337, 344 & n.41 (5th Cir. 2016) (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016)). "The party who invokes equitable tolling bears the burden of proof." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002).

First, the United States has not shown it pursued its rights diligently. To meet the first element, the United States must show that it acted with "reasonable diligence, not maximum feasible diligence." *Lugo-Resendez*, 831 F.3d at 344. "Whether diligence is reasonable is an equitable, often fact-intensive inquiry in which courts are instructed to avoid mechanical rules and instead to draw upon decisions made in other similar cases for guidance." *Palacios v. Stephens*, 723 F.3d 600, 605 (5th Cir. 2013).

The United States missed the August 11, 2019 deadline that it had requested in its first motion to extend. Sixty days later, the United States requested another extension in which it erroneously asserted that its deadline to file was October 10, 2019 and that it was filing its third motion to extend. Although the Court granted the United States's request for an extension until December 9, 2019, the United States missed that deadline as well. The United States then filed three more motions to extend and mislabeled each as its fourth, fifth, and sixth motions to extend.

Based on these facts, the United States has not met its burden to show that it pursued its rights diligently. Missing two deadlines, both of which were dates that the United States had requested, does not demonstrate reasonable diligence. And neither does including erroneous representations in a motion based on an "erroneous belief" that a prior motion to extend had been filed and granted, Dkt. No. 15 at 8, demonstrate the necessary diligence. A quick glance at the docket would have remedied this mistaken assumption, but, for almost a year, the United States

continued filing mislabeled motions to extend and never corrected its erroneous statements to the Court.

Looking to decisions made in other similar cases for guidance is of no help to the United States. For example, in a number of cases across the country, courts have applied equitable tolling "where the Government [was] a day or two late in filing its complaint" because the government had "reasonably misinterpreted the law" as to when the statutory deadline would begin to run. *In re Eight Thousand, Five Hundred Eight Dollars & Sixty-Three Cents from PNC Bank Account xxxxx*, No. MC 17-136, 2018 WL 3427635, at *8 (E.D. Pa. July 16, 2018). In these cases, the United States filed the complaints late because it mistakenly believed that the deadline began to run only when a claim was delivered to an officer in the forfeiture division, rather than when it arrived at the agency's mailroom. *See id*. In this scenario, although the complaints were filed late under the correct reading of the statute, the courts generally found that "the government [had] diligently calculated the statutory deadline for filing" under its incorrect, but defensible, "interpretation [of] the pertinent statutory provisions and regulations." *United States v. $229,850.00 in U.S. Currency*, 50 F. Supp. 3d 1171, 1184-85 (D. Ariz. 2014).

Here, by contrast, there was no question as to when the complaint was due. The United States requested both the August 11, 2019 and December 9, 2019 deadlines but missed both filing dates. There was no unsettled law to apply or any opportunity to miscalculate the amount of days in either filing period. The Court stated the exact date that the complaint was due – and the United States failed to

meet the deadline. The United States has not pointed to any case where a court has found that a party was diligent despite missing a deadline for no reason other than "garden variety neglect." *Id.* at 1184. The Court should find that the United States was not diligent.

Second, the United States has also failed to show that any extraordinary circumstance prevented it from filing the complaint on time. This "second element requires the litigant to establish that an extraordinary circumstance beyond [its] control prevented [it] from complying with the applicable deadline." *Lugo-Resendez*, 831 F.3d at 344. The United States offers no evidence of anything – extraordinary or otherwise – that prevented it from filing its complaint on time. Its only explanation for why it missed the deadline is "that it was relying on the erroneous belief that an extension covering August 11, 2019 through October 10, 2019 had been authorized." Dkt. No. 15 at 8. But "a party's mistaken belief is not an extraordinary circumstance." *Farmer v. D & O Contractors, Inc.*, 640 F. App'x 302, 307 (5th Cir. 2016). And an extraordinary circumstance cannot derive solely from "self-inflicted delay." *Sandoz v. Cingular Wireless, LLC*, 700 F. App'x 317, 320 (5th Cir. 2017). This "garden variety claim of excusable neglect … does not warrant equitable tolling." *Holland v. Florida*, 560 U.S. 631, 651-52 (2010).

Despite providing no evidence of an extraordinary circumstance, the United States argues that equitable tolling is still appropriate. It contends that "there are no hard and fast rules" governing when equitable tolling is available and that courts instead should take a "flexible," "case-by-case approach." Dkt. No. 15 at 11 (citations

omitted). Under this approach, the United States argues that its "good faith actions, its diligence in pursuing the defendant property's forfeiture, and the lack of prejudice or specific hardship to the Claimants" are sufficient reasons to apply equitable tolling. *Id.*

No binding authority supports the United States's contention that the Court can apply equitable tolling without a finding of extraordinary circumstances. The Supreme Court has "expressly characterized equitable tolling's two components as 'elements,' not merely factors of indeterminate or commensurable weight," and has "reject[ed] requests for equitable tolling where a litigant failed to satisfy one [of the elements] without addressing whether he satisfied the other." *Menominee*, 136 S. Ct. at 756; *see also Sandoz*, 700 F. App'x at 320 ("For this narrow exception to apply, a plaintiff *must show* [both elements] ....") (emphasis added). While the Supreme Court has "emphasized the need for flexibility" and has rejected "overly rigid *per se* approach[es]" when determining each element on its own, *Holland*, 560 U.S. at 653 (rejecting Eleventh Circuit's *per se* rule that "attorney conduct that is 'grossly negligent' can never" be an extraordinary circumstance), it is still required that a litigant show that both elements are satisfied, *see id.* at 655 (Alito, J., concurring) ("It is of course true that equitable tolling requires 'extraordinary circumstances.'").

Because the United States has not met its burden to show that it was both diligent in pursuing its rights and that an exceptional circumstance stood in its way of filing, the Court should decline to grant equitable tolling.

## Conclusion

The Court should find that it has subject-matter jurisdiction, that the United States did not timely file its complaint, and that equitable tolling is not warranted. For these reasons, the Court should deny Claimants' Motion to Dismiss under Rule 12(b)(1) and grant Claimants' Motion to Dismiss under Rule 12(b)(6) [Dkt. No. 10]. Having concluded that the United States failed to "file a complaint or return the property" within the statutory deadline, the Court should order the United States to "promptly release the property" and that it "may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense." 18 U.S.C. § 983(a)(3)(B).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: December 4, 2020

 

 

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE